```
 1            IN THE UNITED STATES DISTRICT COURT
 2           FOR THE MIDDLE DISTRICT OF ALABAMA
 3                     NORTHERN DIVISION
 4
 5                                          ORIGINAL
 6   AARON GRUBBS,              )
 7        Plaintiff,            )
 8   VS                         )    CASE NO.:
 9   TOWN OF LOUISVILLE, ALABAMA )    2:04-CV-1025-F
10   et al.                     )
11        Defendant.            )
12
13
14
15        The deposition of ALAN BENEFIELD taken
16   pursuant to the Alabama Rules of Civil
17   Procedure before Anna S. Padgett, Court
18   Reporter and Notary Public, State at
19   Large, at the office of Cobb, Shealy, Crum
20   & Derrick, 206 North Lena Street, Dothan,
21   Alabama on the 7th day of October, 2005,
22   commencing at approximately 10:00 a.m.
23
```

1    Q.    Please look at page 2-2 of Exhibit 45.
2    A.    Okay.
3    Q.    At rule 650-X-2-.05 paragraph 1, does it
4  state the applicant shall be a person of good
5  and moral character and reputation?
6    A.    Correct.
7    Q.    And does it provide additional standards
8  by which those criteria are judged on the
9  following page?
10   A.    It does.
11   Q.    Did Aaron Grubbs submit an application
12 to the Alabama Peace Officer Standards and
13 Training Commission?
14   A.    He did.
15   Q.    Is Defendant's Exhibit 5 a true and
16 correct copy of the application Mr. Grubbs filed
17 with the commission while he was employed with
18 the Louisville Police Department?
19   A.    It is.
20   Q.    Is Defendant's Exhibit 6 a true and
21 correct copy of the application Mr. Grubbs filed
22 with the commission while he was employed with
23 the Brundige Police Department?

1   A.   It is.

2   Q.   Chief Benefield, as the executive
3   secretary, are you personally familiar with the
4   commission's record keeping practices?

5   A.   I am.

6   Q.   Does the commission maintain written
7   records on individual applicants?

8   A.   We do.

9   Q.   Does the commission maintain computer
10  records on individual applicants?

11  A.   We do.

12  Q.   Is it part of the regular practice of
13  the commission to maintain those written records
14  and commuter records?

15  A.   It is.

16  Q.   Are those written records and computer
17  records created at or near the time the
18  commission receives the information?

19  A.   The records, obviously, are created --
20  the hard copies are created when we receive the
21  application.  And they are logged in on the same
22  day that we received the application.  And the
23  applicant file is assigned in the computer

```
 1     Q.  Please look back at pages 2-2 and 2-3 of
 2  the commissions regulations.  Did rule six -- I
 3  believe you already testified that rule
 4  650-X-2-.05 established a character requirement
 5  for police officers in Alabama?
 6     A.  It does.
 7     Q.  According to paragraph three of that
 8  rule, are misdemeanor convictions a factor that
 9  the commission considers when it reviews academy
10  applications?
11     A.  It is.
12     Q.  Does the commission require applicants
13  to disclose all misdemeanor arrests and
14  convictions?
15     A.  Yes.
16     Q.  You have previously identified
17  Defendant's Exhibit 5 as a true and correct copy
18  of Mr. Grubbs academy application that he filed
19  with the commission while he was employed by the
20  Town of Lousiville?
21     A.  Right.
22     Q.  On page two of Exhibit 5, did the
23  application require Mr. Grubbs to list all of
```

```
 1   his arrests and convictions?
 2        A.   Yes.
 3        Q.   How many arrests and convictions did Mr.
 4   Grubbs list?
 5        A.   Three.
 6        Q.   Did Mr. Grubbs use all the blank lines
 7   in that section when he listed those three
 8   arrests?
 9        A.   No.
10        Q.   Did he leave a line blank?
11        A.   Yes.
12        Q.   Could Mr. Grubbs have used that blank
13   line to list more information if he wanted to
14   disclose more information?
15        A.   Yes.
16        Q.   Could Mr. Grubbs have attached a
17   separate sheet of paper and listed even more
18   information if he so desired?
19        A.   Yes.
20        Q.   Please turn over to page four of
21   Defendant's Exhibit 5.  Is this page also part
22   of Mr. Grubbs' police academy application?
23        A.   It is.
```

```
 1    Q.   What is this page?
 2    A.   It is the affidavit page.
 3    Q.   Did that affidavit state, quote, I've
 4  listed any and all misdemeanor arrests and
 5  convictions on my academy application?
 6    A.   Yes.
 7    Q.   Is there a signature under that
 8  sentence?
 9    A.   Yes.
10    Q.   Whose signature is that?
11    A.   Aaron H. Grubbs.  Is that a H?
12    Q.   J, I believe.
13    A.   J.
14    Q.   You can make out Aaron Grubbs?
15    A.   I can make out Aaron initial J it
16  appears now, Grubbs.
17    Q.   Is that signature dated?
18    A.   It is.
19    Q.   What date is that?
20    A.   15 October 2003.
21    Q.   Does the document indicate whether or
22  not Mr. Grubbs' statement was sworn?
23    A.   Yes.
```

```
 1       Q.   Is it sworn?
 2       A.   It is a sworn statement before a notary
 3  public, Janice L. Clark.
 4       Q.   Page four of Defendant's Exhibit 5 is a
 5  sworn statement that Mr. Grubbs filed with the
 6  commission in which he swore that he had
 7  disclosed all his misdemeanor arrests and
 8  convictions?
 9       A.   Yes.
10       Q.   Please look at page three of Defendant's
11  Exhibit 5.  Is page three also part of Mr.
12  Grubbs academy application?
13       A.   It is.
14       Q.   Is there another affidavit at the bottom
15  of page three?
16       A.   It is.
17       Q.   Does it state, quote, I understand that
18  falsification of this application will render me
19  ineligible to attend any law enforcement academy
20  in the State of Alabama and will render me
21  ineligible for certification as a law
22  enforcement officer by the Alabama Peace Officer
23  Standards and Training Commission?
```

```
 1      A.   Yes.
 2      Q.   Does the signature appear immediately
 3   beneath that sentence?
 4      A.   It is.  And it's the signature of Aaron
 5   Grubbs.
 6      Q.   Is the affidavit on page three of
 7   Defense Exhibit 5 also notarized?
 8      A.   It is.
 9      Q.   Does the commission rely on the
10   information provided by the applicant to
11   determine the applicant's fitness to become a
12   law enforcement officer in Alabama?
13      A.   Yes.
14      Q.   Did the commission ultimately approve
15   Mr. Grubbs' police academy application -- the
16   one marked as Exhibit 5?
17      A.   Yes.
18      Q.   Did the commission rely on the
19   information Mr. Grubbs disclosed when it
20   approved the application?
21      A.   Yes.
22      Q.   Specifically, did the commission rely on
23   Mr. Grubbs' sworn statement that he had
```

1  disclosed all of his arrests and convictions
2  when the commission approved Exhibit 5?
3      A.   Yes.
4      Q.   Is Defendant's Exhibit 6 a true and
5  correct copy of a second academy application
6  that Mr. Grubbs filed with the commission?
7      A.   It is.
8      Q.   Is it an application that Mr. Grubbs
9  filed to attend the police academy through the
10 Brundige Police Department?
11     A.   Yes.
12     Q.   On page 2 of the Exhibit 6, did Mr.
13 Grubbs again list only three convictions?
14     A.   Yes.
15     Q.   On page 2 of Exhibit 6, did Mr. Grubbs
16 again leave a blank space in the criminal
17 history section?
18     A.   Yes.
19     Q.   In other words, there was room for Mr.
20 Grubbs to list more information if he wanted?
21     A.   Yes.
22     Q.   On page four of Defendant's Exhibit 6,
23 did Mr. Grubbs again swear that he had disclosed

```
 1   any and all misdemeanor arrests and convictions?
 2        A.   Yes.
 3        Q.   On page three of Defendant's Exhibit 6,
 4   did Mr. Grubbs again swear that he understood
 5   that falsification of his application would
 6   render him ineligible to become certified as a
 7   law enforcement officer in the State of Alabama?
 8        A.   Yes.
 9        Q.   Did the commission approve Mr. Grubbs'
10   police academy application that is marked as
11   Defendant's Exhibit 6?
12        A.   Yes.
13        Q.   Did the commission rely on the
14   information Mr. Grubbs provided in Defendant's
15   Exhibit 6 when it admitted Mr. Grubbs to the
16   police academy on May 3rd, 2004?
17        A.   Yes.
18        Q.   Specifically, did the commission rely on
19   Mr. Grubbs' sworn statement that he had
20   disclosed all of his arrests and convictions
21   when it approved Exhibit 6?
22        A.   Yes.
23        Q.   Let me show you Defendant's Exhibit 43.
```

```
 1   13A-9-13.1?
 2       A.   Yes.
 3       Q.   Is that the section that defines the
 4   crime of negotiating a worthless negotiable
 5   instrument.
 6       A.   Yes.
 7       Q.   What classification is the crime of
 8   negotiating a worthless negotiable instrument?
 9       A.   In this section it's a Class A
10   misdemeanor.
11       Q.   Was Mr. Grubbs legally obligated to
12   disclose all 39 of those misdemeanor convictions
13   for negotiating a worthless negotiable
14   instrument when he swore to Exhibit 5?
15       A.   Yes.
16       Q.   Was Mr. Grubbs legally obligated to
17   disclose all 39 of those misdemeanor convictions
18   when he swore to Exhibit 6?
19       A.   Yes.
20       Q.   Please look at Defense Exhibit 50.  Is
21   Exhibit 50 a true and correct copy of Alabama
22   Code Section 13A-10-103?
23       A.   Yes.
```

```
 1    A.   Yes.
 2    Q.   Did Mr. Grubbs obtain his Alabama law
 3  enforcement certification by swearing falsely?
 4    A.   According to this information, it
 5  appears he did.
 6    Q.   In your opinion as a career police
 7  officer, a former police chief, and the current
 8  executive secretary of the Alabama Peace
 9  Officers Standards and Training Commission, did
10  Mr. Grubbs commit perjury when he signed page
11  four of Defense Exhibit 5?
12    A.   In my opinion, yes.
13    Q.   Did Mr. Grubbs commit perjury when he
14  signed page four of Defense Exhibit 6?
15    A.   In my opinion, yes.
16
17            MR. PIKE:  No further
18         questions.
19
20            EXAMINATION
21  BY MR. NEWMAN:
22    Q.   Chief, let me ask you a few questions
23  and I'll try not to hold you up.  I know you're
```